IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| JANE DOE, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case. No. 21-04102-CV-C-BP |
| ) | |
| MICHAEL TURNER,[1] *et al.*, ) | |
| ) | |
| Defendants. ) | |

**ORDER (1) DISMISSING ALL NON-REGISTRANT PLAINTIFFS, (2) GRANTING JUDGMENT TO DEFENDANTS ON COUNTS I, II, AND X, (3) GRANTING JUDGMENT TO PLAINTIFFS ON COUNT XIII, AND (4) DISMISSING COUNT XI**

Plaintiffs have asserted several constitutional challenges to Missouri's Sex Offender Registration Act ("SORA"), Missouri's version of "Megan's Law."[2] The Court previously dismissed some claims and granted summary judgment (in whole or in part) on other claims; the summary judgment order also substantially narrowed the remaining claims. The Court conducted a bench trial on March 24 and 25, 2025, to permit presentation of evidence and legal argument.

## I. BACKGROUND

The current version of SORA requires any person convicted of specified offenses to, "within three business days of adjudication, release from incarceration, or placement upon probation, register with the chief law enforcement official of the county or city not within a county

---

[1] Michael Turner succeeded Christopher Olson as the Missouri State Highway Patrol's Superintendent and Commander, and he is substituted as a Defendant in Olson's place (in his official capacity) pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

[2] "In 1994, 7-year-old Megan Kanka was sexually assaulted and murdered by her New Jersey neighbor who, unknown to Megan's family, was a child sex offender. Within two years, every state had adopted some type of 'Megan's Law' for mandatory sex offender registration and community notification." *State v. Boeji*, 352 S.W.3d 625, 626 n.2 (Mo. Ct. App. 2011).

in which such person resides . . . ." Mo. Rev. Stat. §§ 589.400.1(2), 589.400.2. To register, individuals must provide, *inter alia*, their address, social security number, phone number, any online identifiers they use, a description of their vehicle, details of their employment, and a description of their conviction. *Id.* § 589.407.1(1). They must also provide their fingerprints, a current photograph, and a DNA sample (if one was not obtained previously). *Id.* § 589.407.1(2)-(4). This information is to be provided on a form prepared by the Missouri State Highway Patrol (the "MSHP"). *Id*. Registration must occur in person. *Id*. § 589.414.1.

The local law enforcement official forwards the completed form to the MSHP, who enters the information into the Missouri Uniform Law Enforcement System. *Id.* § 589.410. The MSHP is also required to maintain a publicly available registry of sex offenders that contains some (but not all) of the information reported by the registrant. *Id*. § 43.650.2. Local law enforcement officials may, if they choose, operate a similar website, *id*. § 589.402, but Defendants play no role in the operation of such websites; they only have a role with respect to the state-run website required by § 43.650.

After registration, individuals must report most changes to their information within three business days. *Id.* § 589.414.1-.2. As with the initial registration, such changes must be reported in person. However, a separate provision requires changes to, or use of new, online identifiers be reported, in person, before the new identifier can be used. *Id.* § 589.414.9.

SORA groups sex offenders into three tiers; placement in a tier is based on the crime committed, *see* Mo. Rev. Stat. § 589.414.5-.7, and is intended to be based on the seriousness of the crime, although no individualized risk (or other) assessment is made for each registrant. These tiers, *inter alia*, impact the amount of time one must remain on the registry; Tier I offenders must register for 15 years, Tier II offenders must register for 25 years, and Tier III offenders must

2

register for life. *Id.* § 589.400.4.³ The tiers also dictate how often registrants must register: Tier I offenders must register annually, Tier II offenders must register semiannually, and Tier III offenders must register every ninety days. *Id*. §§ 589.414.5-.7. The failure to register is a crime. *Id.* § 589.425.

The remaining Plaintiffs are individuals who have been convicted of an offense requiring they register on SORA.⁴ Defendants are Missouri state officials involved with SORA's implementation in some way and have been sued in their official capacity. Defendant Michael Turner is the Superintendent and Commander of the MSHP, which maintains Missouri's sex offender registry. Defendant David Flannigan is the Commander of the MSHP's Technical Services Bureau and is involved in maintaining the sex offender registry. Defendant Christopher Jolly is the Division Director of the MSHP's Criminal Justice Information Services and is also involved in maintaining the sex offender registry.⁵

Plaintiffs filed this action on May 12, 2021. After Plaintiffs filed a First Amended Complaint, Defendants filed Motions to Dismiss. The Court dismissed some of Plaintiffs' claims, and thereafter (with the Court's permission) Plaintiffs filed a Second Amended Complaint, (Doc.

---

³ After a certain period has elapsed, Tier I and II offenders may petition a court to have their name removed from the registry early. *Id.* § 589.401.1, .4. Tier III registrants are not permitted to file such a petition unless their requirement to register was due to a juvenile adjudication. *Id.* § 589.401.3.

⁴ Some Plaintiffs named in the Second Amended Complaint are family members of individuals required to register. Family members are not required to register or take any other action under SORA, and no information about them is reported. Moreover, the Court has observed SORA's effects on registrants' family members are not relevant when determining whether SORA is "punishment" within the meaning of the Eighth Amendment or the Ex Post Facto Clause. (Doc. 162, p. 8 & n.6.) Finally, most of these Plaintiffs' claims related to Missouri laws creating "exclusion zones"—locations where individuals convicted of various crimes could not live, visit, or congregate—but claims regarding exclusion zones were dismissed without prejudice. While these (and other) conclusions from the Court effectively dismissed claims asserted by non-registrants, the Court has not dismissed them formally. Now, for the reasons stated in its prior Orders, the Court dismisses the claims of Plaintiffs who are family members of registrants.

⁵ The then-Governor of Missouri, Michael Parson, was originally named a Defendant in his official capacity, but the Court granted his Motion to Dismiss. (Doc. 43.)

48), which (1) repleaded some of the dismissed claims and (2) remains the operative pleading. Defendants then filed a Motion for Judgment on the Pleadings; the Court granted the Motion in part and (1) dismissed Counts III-VIII for failure to state a claim and (2) dismissed Count IX without prejudice. (Doc. 86.) This left the following claims:

- Count I alleges SORA violates the Eighth Amendment's prohibition on cruel and unusual punishment, (Doc. 48, ¶¶ 507-20);

- Count II alleges SORA is an unconstitutional ex post facto law, (Doc. 48, ¶¶ 521-26);

- Count X alleges SORA's definition of "online identifiers" violates due process because a portion of it is unconstitutionally vague, (Doc. 48, ¶¶ 593-99);

- Count XI alleges SORA violates the First Amendment because it infringes on Plaintiffs' ability to engage in speech and associate with others, (Doc. 48, ¶¶ 600-11);

- Count XII alleges SORA violates the First Amendment because it interferes with Plaintiffs' ability to engage in protected anonymous speech, (Doc. 48, ¶¶ 612-16); and

- Count XIII alleges SORA's requirement that online identifiers be disclosed before they are used constitutes a prior restraint of speech in violation of the First Amendment, (Doc. 48, ¶¶ 617-24.)

Later, Defendants filed a Motion for Summary Judgment on all remaining counts, and Plaintiffs filed a Motion for Partial Summary Judgment. The Court issued an Order, (Doc. 162), that (1) granted Defendants summary judgment on Count XII, (2) granted Plaintiffs partial summary judgment on Count XIII, and (3) narrowed the factual and legal issues to be resolved for the remaining counts. The Court listed those issues at the end of the Order, (Doc. 162, pp. 30-31),[6] and they were addressed at the trial earlier this month.

---

[6] Page numbers for all documents filed with the Court are those generated by the CM/ECF system.

4

## II. DISCUSSION

The Court has set forth the relevant legal analysis several times, particularly in its Orders addressing Defendants' Motion for Judgment on the Pleadings and the parties' Motions for Summary Judgment. In resolving the remaining counts, the Court refers to its prior conclusions and pronouncements (sometimes restating or quoting them without attribution) and incorporates any findings of fact based on evidence presented at trial and additional legal conclusions necessary to resolve the remaining claims. All factual findings are supported by the greater weight of the evidence, and any conflicts in the evidence have been resolved consistently with the Court's findings.

### A. Cruel and Unusual Punishment (Count I)

To qualify as "cruel and unusual punishment," a law must (1) impose punishment (i.e., be punitive in nature) and (2) and be "barbaric []or grossly disproportionate to the offenses committed." *Doe v. Miller*, 405 F.3d 700, 723 n.6 (8th Cir. 2005). The Court will discuss these requirements separately.

#### *1. Whether SORA is Punishment*

Determining whether a law imposes punishment involves a two-pronged test. First, the Court considers whether the legislature intended the statute to impose punishment. *Id.* at 718. If the legislature lacked such intent, the Court must then determine whether "the law is nonetheless so punitive either in purpose or effect as to negate the State's nonpunitive intent." *Id.* (quotation omitted). The Court previously concluded the Missouri legislature did not intend SORA to be punitive in nature, (*e.g.*, Doc. 86, p. 8; Doc. 162, pp. 5-6), and it adheres to that conclusion now. The Court therefore considers the second avenue by which SORA could be considered punishment.

5

In determining whether SORA's punitive effects outweigh the legislature's nonpunitive intent, the Court must consider "whether, in its necessary operation, the regulatory scheme: has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose." *Smith v. Doe*, 538 U.S. 84, 97 (2003) (indicating the factors were derived from *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-169 (1963)). In *Smith*, the Supreme Court acknowledged *Mendoza-Martinez* identified a nonexhaustive list of seven, nondispositive factors to consider, but concluded the factors listed above were "most relevant to [the] analysis." *Smith*, 538 U.S. at 97. Like this case, *Smith* involved a sex offender registry, and the parties have focused on these factors throughout the litigation.[7] Therefore, the Court continues its focus on the factors identified above. Finally, "[b]ecause we ordinarily defer to the legislature's stated intent, *only the clearest proof* will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Id*. at 92 (cleaned up; emphasis supplied).

### (a). Whether SORA is comparable to a practice historically regarded as punishment

The Court previously determined "SORA is not comparable to a practice historically regarded as punishment." (Doc. 162, p. 8.) To the extent Plaintiffs compare SORA to probation, the Supreme Court rejected this analogy in *Smith*. 538 U.S. at 101-02. The Supreme Court also rejected a comparison between registration and public shaming, primarily because dissemination of truthful information to further a legitimate governmental objective is not punishment. *Id*. at 98-99. Plaintiffs point out that the use and reach of the internet has made information more accessible

---

[7] Plaintiffs invite the Court to consider other factors because *Smith* described the list as nonexhaustive. However, the factors they ask the Court to consider were rejected by the Supreme Court in *Smith*, and as stated in the text the factors *Smith* specified are the most relevant.

than it was when *Smith* was decided in 2003. While this observation is undoubtedly correct, the Court does not believe it alters the legal analysis. To the contrary, given what the Supreme Court said in *Smith* about the value and propriety of making information publicly available, there is no reason to believe it would reach a different decision upon learning that technological advances have made publicly available information even more readily available. Thus, the Court adheres to its prior analysis, (Doc. 162, pp. 6-8), and conclusion on this issue: SORA is not comparable to a practice historically regarded as punishment.

### (b).  *Whether SORA imposes an affirmative disability or restraint*

In assessing whether SORA imposes an affirmative disability or restraint, the Court must "inquire how the effects of [SORA] are felt *by those subject* to it. If the disability or restraint is minor and indirect, its effects are unlikely to be punitive." *Smith*, 538 U.S. at 99-100 (emphasis supplied). The Court previously determined SORA is not comparable to criminal supervision (*e.g.*, probation). (Doc. 162, p. 9.) Additional restrictions (such as "exclusion zones" restricting, for instance, sex offenders' ability to go to schools or parks) are not relevant because those restrictions are imposed because of Plaintiffs' convictions and are not related to SORA. The Court also held that other disadvantages cited by registrants (*e.g.*, loss of jobs and denial of leasing opportunities) are not relevant to the extent they would have occurred through the use of background checks by employers and landlords. (Doc. 162, p. 10 (citing *Smith*, 538 U.S. at 100).) The Court then observed some evidence, when construed in the light most favorable to Plaintiffs (as was required at the summary judgment stage), indicated some may have suffered adverse consequences because they are on SORA's registry and not because they were convicted of a crime requiring them to register. Having heard testimony and received other evidence, the Court now finds Plaintiffs have

not established that the disadvantages they experience are the result of the registry as opposed to their convictions.[8]

The Court first notes a difference between a person (1) suffering an adverse effect because they are on the registry and (2) suffering an adverse effect because another (such as a prospective employer or landlord) learns, via the registry, that the person has been convicted of a sex offense. In the latter case, the adverse effect is because of the conviction; the fact that the information was gleaned from the registry does not make the registry the cause of the denial.

Witnesses attempted to characterize the adverse consequences they suffered as having been caused by the registry and not the conviction, but most of this testimony constituted hearsay and all of it was speculative and unpersuasive. Further, many witnesses testified about information Plaintiffs conveyed to others (in answer to questions asking about prior convictions) or information obtained through background checks conducted by another parties or Google searches that revealed the registry. But no evidence established the adverse effect was the result of the registry rather than publicly available records regarding the individual's conviction.

The Court acknowledges the testimony of Jane Doe I, whose conviction is sealed and thus cannot be found on Case.net or in other public records.[9] However, she admitted there was significant media coverage about her crime. Regardless, even if her testimony established that others learned of her conviction only through the registry, this would not demonstrate any

---

[8] The Court also held that "while the weight of authority demonstrates SORA's requirement that a registrant report in person is a minimal burden, it is still a burden so the analysis does not end there, and the Court will need to determine if the burden is rationally related to SORA's nonpunitive purpose," (Doc. 162, p. 10), which it will do in Part II(A)(1)(d), below.

[9] Case.net is a publicly available, searchable website that provides information about cases in Missouri state court.

consequences she experienced were the result of being on the registry as opposed to the fact that she was convicted.[10]

As stated earlier, only the "clearest proof" will "transform what has been denominated a civil remedy into a criminal penalty." *Smith*, 538 U.S. at 92. Here, however, the Court finds Plaintiffs have not even proved by the greater weight of the evidence that any of them suffered adverse job, housing, professional, or other consequences from being on the registry that were not caused by the fact or nature of their convictions.

### (c). Whether SORA promotes the aims of punishment

The Court described this factor as requiring Defendants "to simply identify the nonpunitive purposes intended by the Legislature so that the fourth factor—which asks whether there is a rational connection to the nonpunitive purposes—can be analyzed." (Doc. 162, p. 13.) Defendants identified two nonpunitive purposes: (1) to alert the public to the presence of sex offenders in their community and (2) to assist law enforcement in preventing and protecting against the commission of future offenses. (Doc. 134, pp. 21-22.) These are legitimate nonpunitive purposes, *e.g.*, *Smith*, 538 U.S. at 102-03; *Shaw v. Patton*, 823 F.3d 556, 573 (10th Cir. 2016); *United States v. Under Seal*, 709 F.3d 257, 265 (4th Cir. 2013), and with them in mind, the Court turns to the fourth and final factor.

### (d). Whether SORA has a rational connection to its nonpunitive purposes or is excessive with respect to them

The requirement of a connection between SORA and its nonpunitive purpose is "not demanding" and the connection need not be close or perfect. *Doe v. Miller*, 405 F.3d 700, 721

---

[10] The Court also acknowledges the testimony of John Doe VIII, whose nonpublic military conviction requires him to register. However, John Doe VIII's testimony was provided as a facial challenge to SORNA as he no longer lives in Missouri and is no longer required to register in Missouri, but evidence about his circumstances, alone, is insufficient to support a facial challenge. Moreover, as with Jane Doe I, his testimony does not establish any consequences he experienced were the result of being on the registry as opposed to the fact that he was convicted.

9

(8th Cir. 2005). The Legislature may draw categorical distinctions; it is not required to provide individualized determinations about the "need" or justification for a person to be on the registry. *Smith*, 538 U.S. at 103.

SORA has a rational connection to its purpose of alerting the public to the presence of sex offenders in the community. As the Court stated previously, "public notification is the primary purpose of the registration scheme. When equipped with information provided by SORA, members of the public can make individual decisions on how to protect themselves and their children." (Doc. 86, p. 8.) The Supreme Court has made the same point. *See Smith*, 538 U.S. at 99 ("Widespread public access is necessary for the efficacy of the scheme, and the attendant humiliation is but a collateral consequence of a valid regulation.") Similarly, it takes little analysis to demonstrate that access to the information registrants supply may be useful to law enforcement investigating certain crimes.

The next step of the inquiry asks whether SORA is nonetheless excessive in light of these purposes. "The excessiveness inquiry . . . is not an exercise in determining whether the legislature has made the best choice possible to address the problem it seeks to remedy. The question is whether the regulatory means chosen are reasonable in light of the nonpunitive objective." *Smith*, 538 U.S. at 105. The Court previously rejected (and will not revisit) two of Plaintiffs' arguments: that SORA is excessive because (1) it is based on inaccurate assumptions about the risk that a sex offender will reoffend and (2) the Legislature's choice of crimes for each of the tiers does not accurately reflect the seriousness of the crimes or the risk of recidivism. (Doc. 162, pp. 15-16.)

Plaintiffs also argued the in-person registration requirement renders SORA excessive, and the Court deferred ruling on this issue. *Smith* found it important that Alaska's statute did not require personal registration, *Smith*, 538 U.S. at 101; on the other hand, various Courts of Appeal

10

Case 2:21-cv-04102-BP    Document 240    Filed 03/31/25    Page 10 of 19

have held the burden imposed by such a requirement is not excessive. In *Shaw*, the Tenth Circuit was "guided by precedents addressing other harsh conditions that the Supreme Court has not regarded as punitive. For example, the Supreme Court has held that a lifelong bar on work in a particular industry does not constitute an affirmative disability or restraint that is considered punitive." *Shaw*, 823 F.3d at 569. The Tenth Circuit then cited cases in which the Supreme Court discussed the potential punitive effects of restrictions on participation in the banking industry, a prohibition on working as a union official, and revocation of a medical license, and concluded "[a] lifelong bar on work in an industry is harsher than [the] reporting requirements." *Id*. Other circuits have applied a similar analysis to conclude an in-person reporting requirement is not a disability or restraint that would support a finding that registration constitutes punishment. *E.g.*, *Prynne v. Settle*, 848 Fed. App'x 93, 120 (4th Cir. 2021); *Doe v. Cuomo*, 755 F.3d 105, 112 (2d Cir. 2014); *see also United States v. Parks*, 698 F.3d 1, 6 (1st Cir. 2012); *United States v. W.B.H.*, 664 F.3d 848, 857 (11th Cir. 2011). Nonetheless, the Court deferred ruling on this issue because Defendants had not explained the value of such a requirement or, more specifically how requiring in-person registration is rationally related to SORA's nonpunitive purposes. (Doc. 162, pp. 17-18.)

At trial, Defendants presented testimony explaining the purposes served by the in-person reporting requirement. Those purposes include: (1) ensuring the registrant is the person supplying the information, (2) providing an opportunity for the chief law enforcement officer (or his or her designee) to discuss potential errors or omissions with the registrant, and (3) ensuring all necessary information is updated and current. The Court finds the in-person reporting requirement is rationally related to these purposes.

Plaintiffs argue these objectives can be satisfied through other means, but this is not the correct inquiry. SORA need not employ the most effective or the most rational means of

11

accomplishing its ends; its means need only be rationally related to its nonpunitive objectives. Like every court to examine the issue, the Court finds the in-person reporting requirement is rationally related to SORA's nonpunitive purposes, and it is therefore not excessive.

### (e). Consideration of all the Smith Factors

Having addressed the *Smith* factors individually, the Court now considers them together. SORA is not comparable to a practice historically regarded as punishment. SORA does not promote the aims of punishment; instead, it serves the nonpunitive purposes of alerting members of the public to the presence of sex offenders in their community and aids law enforcement in the investigation of crimes. Finally, SORA does not impose any affirmative disabilities or restraints. To the extent the requirement of in-person reporting qualifies as a disability or restraint, it is rationally related to SORA's nonpunitive purposes. Accordingly, the Court concludes SORA is not "punishment" within the meaning of the Eighth Amendment.[11]

### 2. Whether SORA is Barbaric or Grossly Disproportionate to the Offenses Committed

Even if the preceding analysis established that SORA is "punishment," it violates the Eighth Amendment only if it is barbaric or grossly disproportionate to the offenses committed. A restriction or sanction (such as SORA) could constitute punishment because it lacks a sufficient connection to its nonpunitive purpose yet not be "barbaric" because it is not so excessive that it is grossly disproportionate to the offenses to which it applies. Though different, these questions are related: both require, *inter alia*, a comparison of the restriction or sanction to the offense. *See, e.g., United States v. Scott*, 831 F.3d 1027, 1033-34 (8th Cir. 2016) (discussing factors to be considered in determining if a sentence is "grossly disproportionate" to the crime).

---

[11] There has been significant discussion as to whether Plaintiffs are presenting an as-applied challenge, a facial challenge, or both. Ultimately, it does not matter: Plaintiffs have not demonstrated that SORA qualifies as punishment either (1) in its general application or (2) in light of their particular circumstances. Thus, regardless of how Plaintiffs' claim is characterized, they have not demonstrated SORA constitutes punishment.

12

The Court has already observed neither the First Amended Complaint nor the Second Amended Complaint allege SORA is barbaric. (Doc. 43, p. 6; Doc. 162, p. 18.) Moreover, nothing presented at trial persuades the Court that SORA is sufficiently disproportionate. Thus, even if SORA constituted punishment, it does not violate the Eighth Amendment's proscription against cruel and unusual punishment.

### B. Ex Post Facto Clause (Count II)

"The ex post facto prohibition forbids Congress and the States to enact any law which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28 (1981) (footnote and quotation omitted). The test utilized to determine if SORA is "punishment" within the meaning of the Eighth Amendment (*see* Part II(A)(1), *infra*) also applies here. *E.g.*, *United States v. Winston*, 850 F.3d 377, 381 (8th Cir. 2017) (citing both *Smith* and *Mendoza-Martinez*); *Miller*, 405 F.3d at 719. Thus, for the reasons previously discussed, the Court concludes SORA is not punishment and therefore cannot violate the Ex Post Facto Clause.

### C. Void for Vagueness - Definition of Online Identifiers (Count X)

Individuals subject to SORA must register their "online identifiers" with the chief local law enforcement officer, Mo. Rev. Stat. § 589.407.1(1), and failure to report them is a crime. *Id.* § 589.425.1. An online identifier is an "electronic mail address and instant message screen name, user ID, cell phone number or wireless communication device number or identifier, chat or other internet communication name, or other identity information." *Id.* § 43.651.1(4). Count X asserts one item on this list—the catch-all phrase "other identity information"—is overly broad and vague and fails to provide adequate notice regarding what must be reported.[12]

---

[12] In their Trial Brief, Defendants argue Plaintiffs lack standing to assert this claim because none of them have been prosecuted for failing to provide information called for by the definition's catch-all for "other identity information."

13

"The void-for-vagueness doctrine is embodied in the due process clauses of the [F]ifth and [F]ourteenth amendments." *Woodis v. Westark Cmty. Coll.*, 160 F.3d 435, 438 (8th Cir. 1998) (quotation omitted). It dictates that "a law is unconstitutional if it 'fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.'" *Musser v. Mapes*, 718 F.3d 996, 1000 (8th Cir. 2013) (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)); *see also Johnson v. United States*, 576 U.S. 591, 595-96 (2015). A statute violates the void-for-vagueness doctrine when criminal liability is based on "wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings." *Williams*, 553 U.S. at 306. In the abstract, the meaning of "other identity information" is unclear and could extend to such things as cookies and IP addresses.[13] Defendants do not seriously contend otherwise; to the contrary, they seem to agree the phrase does not have a fixed meaning. (*E.g.*, Doc. 194, p. 15.)

Nonetheless, the Court rules for Defendants because in their administration of SORA they have clarified and specified the meaning of "other identity information." When evaluating whether a statute is void for vagueness, the Court must consider whether the statute has been narrowed or clarified by, for instance, state judicial decisions or regulations. *See, e.g.*, *Posadas de Puerto Rico*

---

(Doc. 194, pp. 13-14.) The Court disagrees because an actual prosecution is not required to satisfy standing; all that is required is a credible threat of prosecution. *E.g.*, *Susan B. Anthony List v. Driehaus*, 573 U.S. at 158-59 (2014). Such a "threat" does not require communication by a prosecutor expressing an intent to file charges; it is enough if Plaintiffs intend to engage in conduct that is arguably proscribed by the statute. *E.g.*, *Turtle Island Foods, SPC v. Thompson*, 992 F.3d 694, 699 (8th Cir. 2021); *Alexis Bailly Vineyard, Inc. v. Harrington*, 931 F.3d 774, 777-78 (8th Cir. 2019). Plaintiffs allege they engage in online activity, which triggers an obligation to report "other identity information." Thus, to avoid violating the law, they need to accurately interpret the phrase and determine what "other identity information" they must report. This is a sufficient threat of injury to support standing for their claim that the phrase is unconstitutionally vague.

[13] According to Merriam-Webster Dictionary, cookies are small files stored in computer that may contain personal information, such as a user identification code, customized preferences, or a record of web pages visited, and an IP address is "the numeric address of a computer on the Internet." (Merriam-Webster: America's Most Trusted Dictionary (last visited March 28, 2025).)

14

*Assocs. v. Tourism Co. of Puerto Rico*, 478 U.S. 328, 347 (1986), *abrogated in part on other grounds by 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484 (1996); *Steffel v. Thompson*, 415 U.S. 452, 469-70 (1974); *Stephenson v. Davenport Cmty. Sch. Dist.*, 110 F.3d 1303, 1309 (8th Cir. 1997). Here, the MSHP is authorized to "promulgate rules and regulations regarding the release and use of online identifier information," Mo. Rev. Stat. § 43.651.2(1), (2), and as stated earlier it is required to prepare a form for chief law enforcement officials to use when collecting information for SORA. The current version of the form, which has been in use since 2018, was admitted into evidence as Defendants' Exhibit HH and it lists the information registrants must provide. For instance, registrants are asked to provide IP addresses but are not asked to provide information about cookies. Therefore, registrants do not have to guess what the phrase "other identity information" means or harbor doubt about what information they must provide. The form asks for IP addresses; therefore, Plaintiffs must provide IP addresses. The form does not ask for cookies; therefore, Plaintiffs need not volunteer information about cookies.

The case is analogous to *Reproductive Health Servs. of Planned Parenthood v. Nixon*, 428 F.3d 1139 (8th Cir. 2005). There, a Missouri statute prohibited abortions unless the provider first obtained informed consent, which required the provider to advise the woman of the risk factors and the "indicators and contraindicators." The statute further required the Missouri Department of Health and Human Services develop a form that could be used to obtain the required consent. 428 F.3d at 1141-42. The Eighth Circuit noted "there is force to the contention that physicians will have difficulty determining precisely what [the statute] mandates before [it] is clarified and the department of health and senior services disseminates the form" it was required to craft, *id*. at 1144, and it upheld the preliminary injunction barring enforcement, at least until the form was available.

15

Here, registrants must complete a form created by the MSHP. Mo. Rev. Stat. § 589.407.1. Registrants are not required to supply information that is not requested on the form. Given the form's clarity, Defendants are entitled to judgment on Count X.[14]

### F. Prior Restraint (Count XIII)

Under SORA, registrants must report any changed or new online identifiers in person to local law enforcement before using them. Mo. Rev. Stat. § 589.414.9. In contrast, changes to other types of information (such as home addresses or employment information) must be reported within three business days. The Court held—and continues to hold—the requirement that identifiers be reported before they are used is an unconstitutional prior restraint on speech in violation of the First Amendment. (Doc. 162, pp. 27-29.) In summary, while Plaintiffs' online identifiers and speech are not subject to Defendants' approval or disapproval, Plaintiffs' speech is subject to criminal sanction until they comply with SORA by registering any new or changed identifiers. As the Court explained, "[t]his is not something that can be done on the spur of the moment . . . registrants cannot lawfully use the new or changed identifiers until they can personally appear at the local law enforcement office during business hours." (Doc. 162, p. 28.) Therefore, Plaintiffs' ability to speak lawfully depends on first complying with SORA, which prevents (or delays) their exercise of their First Amendment rights and therefore makes the requirement to register in advance a prior restraint. *See, e.g., Alexander v. United States*, 509 U.S. 544, 550 (1993); *Bowman v. White*, 444 F.3d 967, 980 (8th Cir. 2006). And at trial, Defendants did not attempt to justify the need for Plaintiffs to comply with SORA's requirements before engaging in

---

[14] Plaintiffs presented evidence of other, unrelated issues with respect to this reporting requirement. For instance, John Doe IX testified he had been told by someone in his local sheriff's office he did not need to register certain email addresses when registration was required by § 43.641.1(4). However, Plaintiffs do not contend the statute's reference to "electronic mail address[es]" is vague.

16

First Amendment activity.[15] The Court therefore adheres to its conclusion that requiring registrants to register new or changed identifiers before speaking violates the First Amendment. Moreover, the requirement is invalid on its face because there is no set of circumstances in which this prior restraint can be justified. *See Missouri Broadcasters Ass'n v. Lacy*, 846 F.3d 295, 300 (8th Cir. 2017) (describing when a statute is facially invalid).

The remaining issue relates to the appropriate remedy. Plaintiffs ask the Court to strike the requirement that online identifiers be reported, but this is not appropriate because the registration requirement, as a whole, is not unconstitutional; the only unconstitutional aspect relates to the timing. The Court also cannot bar enforcement of the deadline in § 589.414.9 because Defendants have no role in SORA's enforcement.

However, the form prepared for registrants by the MSHP (Exhibit HH) includes a page of instructions advising registrants of their obligations. The sixth paragraph reflects § 589.414.9's deadline and tells registrants that if they "obtain a new online identifier, [they] must report such information to the registering Chief Law Enforcement Official before using the identifier." During the trial, the Court discussed with the parties the viability of directing the MSHP to amend the form to remove the time limitation in the sixth paragraph, which would leave the broader time limitation requiring that the information be reported within three business days. Defendants, while not conceding § 589.414.9 is unconstitutional, agreed this was a workable solution. Plaintiffs concurred. Therefore, the Court (1) grants judgment to Plaintiffs on Count XIII and (2) orders Defendants to modify the form given to chief law enforcement officials to remove the directive

---

[15] SORA's advance registration requirement is not comparable "to regulations requiring parade or demonstration permits and imposing conditions on such permits. Such regulations have generally been treated as time, place, and manner restrictions and have been upheld if they are content neutral, serve a substantial governmental interest, and leave open alternative avenues of communication." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 245 (1990). SORA's requirement is not a time, place, or manner restriction, and as stated above Defendants do not provide any justification for it.

that new or changed online identifiers be reported before they are used, as it currently instructs in the sixth paragraph on page 4 of the form.

### D. Freedom of Speech and Association (Count XI)

Count XI is the combination of other claims asserted elsewhere in the Second Amended Complaint. As the Court previously explained,

> Count XI alleges Plaintiffs' First Amendment rights are burdened, and their speech is chilled, by a combination of (1) the requirement that they report new and changed online identifiers before using them, (Doc. 48, ¶ 604); (2) the deprivation of their ability to speak anonymously, (Doc. 48, ¶ 603); (3) the burden involved in reporting new and changed online identifiers personally, (Doc. 48, ¶¶ 603, 605)[;] and (4) fear of reprisal from the public due to uncertainty as to whether their online identifiers will be publicly available, (Doc. 48, ¶¶ 606-07).

(Doc. 86, p. 17.) In other words, Count XI "essentially reiterat[es] Counts XII and XIII and add[s] allegations about the burden involved in reporting new and changed online identifiers personally," so the outcome on Count XI depends on the outcomes on Counts XII and XIII. (Doc. 162, p. 23.)

Count XI is a redundant claim. Accordingly, it is dismissed.

### III. CONCLUSION

For the reasons set forth above, the Court

1. dismisses all claims asserted by Plaintiffs who are not required to register or otherwise comply with SORA,

2. grants judgment to Defendants on Counts I, II, and X,

3. grants judgment to Plaintiffs on Count XIII and directs Defendants to modify the form given to chief law enforcement officials to remove the directive that new or changed online identifiers be reported before they are used, as it currently instructs in the sixth paragraph on page 4, and

4. dismisses Count XI as redundant with other counts disposed of above.

**IT IS SO ORDERED.**

                                                            /s/ Beth Phillips
                                                            BETH PHILLIPS, CHIEF JUDGE

DATE: March 31, 2025                         UNITED STATES DISTRICT COURT